## Hodgen v. Hodgen.

(Decided October 14, 1914.)

### Appeal from Marion Circuit Court.

1. Husband and Wife—Separate Maintenance—Action—Sufficiency of Evidence.—Evidence held to sustain the finding of the chancellor that plaintiff was entitled to recover of her husband separate maintenance and support for herself and child, and that an allowance of $85 a month was not excessive.

2. Husband and Wife—Separate Maintenance—Award of Lump Sum. —While it is the general rule to award a lump sum as alimony in cases of absolute divorce, yet where there is a mere separation, and defendant's chief source of income is from his profession, a monthly allowance may be made.

H. W. RIVES for appellant.

WILLIAM W. SPALDING for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Plaintiff, Bessie Hodgen, brought this action against her husband, William S. Hodgen, to recover

support and maintenance for herself and an infant child, six years of age. The chancellor made her an allowance of $85 a month. Defendant appeals.

Plaintiff and defendant were married early in the year 1906. After their marriage, they boarded at the home of defendant's parents, and remained there for about 18 months. On April 25, 1907, their only child, Will S. Hodgen, Jr., was born. Later on they went to housekeeping, and kept house until the month of October, 1911, when plaintiff went to visit her sister in Louisville. On October 27th, plaintiff was operated on for some female trouble, and at the same time her appendix was removed. She then returned to Lebanon, and for some time she and her husband made their home with her parents, who lived in the country. After leaving the home of her parents, they again went to housekeeping. On June 1, 1912, defendant left his home. On June 4 of the same month plaintiff wrote him a letter asking him to return. He declined to do so, and since said June 1, 1912, they have not lived together. As we view the record, there is nothing in it reflecting on the character of either party. The defendant is shown to be a successful dentist, and a man of good habits. Though thrifty and economical, he always made suitable provision for his family. On the other hand, it appears that plaintiff is a woman of culture and refinement, and an excellent housekeeper. She took great interest in her home, and found pleasure in making it attractive for her husband and child. It is also clear from the evidence that plaintiff is of a nervous temperament, and given at times to exhibitions of slight temper. At times she was also subject to spells of depression and melancholia. Her natural tendency in these respects was largely increased by ill health, from which she was a great sufferer. There is but little in the record tending to show any unusual exhibition of temper on the part of either plaintiff or defendant. On the whole they demeaned themselves with great propriety in the presence of others.

We deem it unnecessary to set out at length the little incidents relied on by each party to show that the other was at fault. It is apparent that plaintiff was of an affectionate disposition, and perhaps her affection was of rather an exacting character. Her nature demanded from her husband those little attentions which are always indicative of love, and which the husband should

not fail to give, especially where they are absolutely essential to his wife's happiness. We may refer to one or two instances which show defendant's attitude towards his wife. His wife was sick in bed. He returned from his office in the evening. She asked him to come sit by her and hold her hand. He replied that he had been on his feet all day and was tired. She burst into tears and upbraided him for his lack of interest. He called on his mother-in-law to quiet her, when the only soothing she needed was some demonstration of his love. When she went on a visit to her sister in Louisville it does not appear that he was advised of the fact that she would be operated on. After the operation took place plaintiff's father was advised of the fact, and immediately bore the news to defendant. The operation was of a serious character. Defendant did not go to his wife until about eight days later. When he did go, he remained in the room with plaintiff for only a short while, and then expressed a desire to go out and see the city of Louisville, which he had not seen for some time. It is true we can not look into the home of these parties and appreciate fully the provocation for defendant's conduct. It may be that plaintiff frequently complained to him of his lack of affection. It may be that her complaints were at times without adequate cause. At the same time it conclusively appears from the record that plaintiff was unhappy, and this unhappiness grew out of the belief that defendant no longer loved her. That part of it was due to her imagination may be true, but that much of it was due to his natural coldness and indifference the record leaves no room to doubt.

Defendant justifies his abandonment of his wife by the production of certain papers written by her, and which he filed with his answer. We deem it unnecessary to copy these papers in full. They are not addressed to any one, and are not susceptible of the construction that plaintiff was in love with anyone else. In these letters she refers to the fact that she married the one that she loved best, but not the one that loved her best. She speaks of her husband's lack of affection, and of her consequent unhappiness. While it is true that she speaks of some unknown person who had loved her, and whose love had never changed, and of the fact that he had come to her in her dreams and had made her happy, there is no suggestion of impurity or unfaithfulness on her part, but merely an expression of the consolation

afforded her by the fact that some one else loved her and stayed by her in her unhappiness. Indeed, the letters are nothing more than the outpourings of a sensitive heart, made unhappy by the belief that her husband, whom she had loved best, no longer loved her, and a silent appeal to some one else to come and help her bear her troubles. It does not appear that these letters to an unknown person were ever intended for human eyes. They were not addressed to any one, nor were they ever given to any one to be delivered. Since, in our opinion, they do not contain even a suggestion of impurity or unfaithfulness, we conclude that they do not offer any reasonable ground for defendant's abandonment of his wife, especially in view of the fact that they were the offspring of a condition of mind which defendant had helped to bring about by his own indifference, which, considered in the light of her highly organized and nervous temperament, and her natural tendency to melancholia, of which he was fully aware, amounted to a species of cruelty on his part. While we can not say that plaintiff was altogether free from fault, yet when we consider that on the one side is a woman of a nervous and sensitive nature, demanding love and affection, while on the other side is a man of more than ordinary force and strength, who begrudged her those little attentions which would have gratified the cravings of her heart, we conclude that his fault is the greater. Out of it grew those conditions which are in a great measure responsible for any shortcoming which may be justly charged to plaintiff. It follows that the chancellor did not err in requiring the defendant to make suitable provision for the maintenance and support of his wife and child.

But it is insisted that the allowance of $85 a month is out of proportion to defendant's property and income, and that it would be more in harmony with the later opinions of this court to award plaintiff a lump sum. The evidence shows that defendant settled on his mother about $5,000 worth of bonds in trust for his child. The income, however, was to the mother as long as she lived. In addition to this property, which for the purpose of this case may be taken into consideration, defendant has certain real estate upon which he receives a net income of $450. His net income from his dental practice is about $1,400. It may be safely said, therefore, that he has an income in excess of $2,000 a

year. Taking into consideration defendant's income, and the social standing of the parties, we conclude that an allowance of $85 a month, or $1,020 a year, is altogether reasonable. While in later cases of an absolute divorce, we have adopted the rule to award a lump sum, yet in a case like this, where there has been a mere separation from bed and board, and the defendant's chief source of income is from his profession, we see no reason for changing the method or amount of payment fixed by the chancellor, in view of the fact that these matters are still under his control, and may be altered to meet any change in the condition of the parties.

The chancellor made no order with reference to the custody of the child, but reserved this question for future adjudication. In view of this fact, we express no opinion of the question, but for the present leave the determination of it to the chancellor, with full confidence that he will place the child where its welfare will be best subserved, and at the same time give to the other parent a reasonable opportunity to see and visit the child.

Judgment affirmed.